# MORRIS *v.* THE STATE.

No. 15390.   FEBRUARY 19, 1946.   REHEARING DENIED MARCH 5, 1946.

474

478

*H. Alonzo Woods* and *Thomas Arnold Jacobs,* for plaintiff in error.

*Eugene Cook, Attorney-General, Charles H. Garrett, Solicitor-General,* and *Daniel Duke, Assistant Attorney-General,* contra.

DUCKWORTH, Justice. (After stating the foregoing facts.) The first four special grounds complain because certain evidence offered by the State was allowed, and a written confession and a petition for change of venue were sent out with the jury, but show that no objection thereto was made by the defendant, thus presenting for decision the question whether or not such complaints, not made at the trial but presented for the first time in the amended motion for new trial, will be reviewed by this court. It is insisted by counsel that, since it is the duty of the trial judge to see that the trial is conducted in a fair and legal manner, it was, therefore, his duty, on his own motion and without objection from the defendant, to exclude the evidence complained of. It is insisted that this contention is sustained by *Grady* v. *State,* 11 *Ga.* 253 (3), *Hill* v. *State,* 41 *Ga.* 484, *Goodrum* v. *State,* 60 *Ga.* 509, *Augusta & Summerville Railroad Co.* v. *Randall,* 85 *Ga.* 297 (6) (11 S. E. 706), *Kelly* v. *Strouse,* 116 *Ga.* 872 (8-a) (43 S. E. 280), and 1 Wharton's Criminal Law (11th ed.) 269, 270, §§ 226, 227. Perhaps the most frequently referred to discussion of this question is found in *Moody* v. *Davis,* 10 *Ga.* 403, by Nisbet, J. There the exception under review was not to the failure of the trial judge to act on his own motion, but rather to the voluntary action of the judge in excluding evidence to which counsel had made no objection. The decision sustained the action of the court and discussed at length the right and duty of the trial judge to act thus on his own motion; and, after stating that the trial judge is presumed to know the law, but that this presumption of knowledge does not attribute to him perfection, it does charge him with the indispensable necessity of ascertaining and ruling

on every point of law arising out of the case, it is then said: "Hence, a mere omission to suggest and apply a point not brought to his notice is not error, unless, as I suppose, it were made to appear to a corrective tribunal that he was cognizant of it." The exception ruled upon in *Grady* v. *State,* supra, was to an interruption by the court on its own motion to direct counsel to read the whole testimony and he would find that his interpretation was wrong, and counsel admitted that upon reading the whole testimony the court was right. Thus the exception was to a voluntary act of the court without request or objection. The exception in *Hill* v. *State,* supra, was to a voluntary action of the trial judge in directing witnesses to hear their evidence read over to them. No objection was made at the time, and the action of the judge was affirmed. Another exception to the voluntary action of the trial judge was under review in *Goodrum* v. *State,* supra, and the trial judge was there affirmed. In *Woolfolk* v. *State,* 81 *Ga.* 551 (4) (8 S. E. 724), cited by counsel, the opinion, after a reversal of the trial judge on other grounds, said: "We grant a new trial in this case with less reluctance because of the facts alleged in the 19th and 20th grounds of the motion for a new trial." The matters complained of in grounds 19 and 20 were outcries in the back of the audience of "Hang him! Hang him!" and another declaration by a prominent citizen near the jury of "Hang him!" While such grounds were matters for the court to act upon on its own motion, and, hence, differ from the questions here presented, which were as to the admissibility of evidence, and allowing documentary evidence to go out with the jury, and the case is thus distinguished, it should be observed that even there the reversal was not based upon those grounds alone. The exception under review in *Augusta &c. Railroad Co.* v. *Randall,* supra, was to prejudical argument of counsel objected to by opposing counsel and persisted in despite orders from the court to desist. That decision in no wise supports the argument here made. In *Kelly* v. *Strouse,* supra, after having observed that it is the duty of counsel to protect his client, but it is much more the duty of the judge to save the law from being outraged, it is there said: "Neither the laches of the litigant nor the negligence of counsel will absolve the judge from his sworn obligation to administer the law." The ruling there made was a review of the action of the trial judge in enter-

ing a judgment in favor of the plaintiff and refusing to allow the defendant to demur to the petition at the conclusion of the evidence. That was not a case where the non-action of the trial judge, in the absence of any request from counsel, was under review, and the decision has no application to the question here presented. There can be no serious challenge of the assertion of counsel to the effect that it is the duty of every trial judge to see that a fair trial is had according to law. We would be reluctant to believe that any trial judge is for a single minute throughout the trial unmindful of the solemn duty which rests upon him to see that the trial is conducted according to law, and that the law is protected against outrage. This does not mean, however, that it is either the duty or within the power of the Supreme Court to review the non-action of a trial judge where both sides are represented by counsel and where neither counsel requests the judge to act. A trial in Georgia is a trial according to law only when conducted according to the established rules of practice and procedure. One rule that has been asserted repeatedly, and applied in *Aycock* v. *State,* 188 *Ga.* 550 (10) (4 S. E. 2d, 221), is that an exception to evidence when offered upon the trial is essential to a review of the trial judge's action in admitting such evidence. There are no exceptions to this rule and none will be made in a given case as a substitute for action of counsel. The Code, § 81-1009, forbids improper arguments and imposes the duty upon the trial judge to interpose and prevent such arguments. Yet it has been held that, unless the court's attention is called to such improper argument and a ruling invoked upon the trial, it is too late to raise the point for the first time in a motion for new trial. In *Young* v. *State,* 65 *Ga.* 525, 528 (3), it was said that to allow one to keep silent during the trial and complain for the first time in a ground of a motion for new trial would be to let him lie in ambush both for the judge and the opposite party; and in *Turner* v. *State,* 70 *Ga.* 765, it was held that, where the trial judge's attention was not called to improper argument during the trial, it would not constitute a good ground of a motion for new trial.

Thus it is seen that, to enforce by a review the performance of the duty imposed by statute upon the trial judge, the law in the form of a rule of procedure, requiring an objection during the trial, must be observed. The rules of practice and procedure are

just as much a vital part of the law of this State as any statute. They are so important that this court has repeatedly held that a constitutional question would not be decided by this court in the absence of compliance with the rules requiring that it be raised in the trial court. It is declared in the Constitution (Code, § 2-402), that "Legislative acts in violation of this Constitution, or the Constitution of the United States, are void, and the judiciary shall so declare them." Yet this court has held that, unless the attack specifies the statute and provisions of the Constitution violated and is made in the trial court, the Supreme Court will not rule upon the same. *Savannah Railway Co.* v. *Hardin,* 110 *Ga.* 433 (35 S. E. 681) ; *Laffitte* v. *Burke,* 113 *Ga.* 1000 (39 S. E. 433) ; *Huiet* v. *Dayan,* 194 *Ga.* 250 (21 S. E. 2d, 423) ; *Black* v. *Milner Hotels Inc.,* 194 *Ga.* 828, 832 (5) (22 S. E. 2d, 780). The question now pressed by counsel was forcibly urged by counsel in *Aycock* v. *State,* supra.. There, as here, the attorney presenting the case to the Supreme Court was not the attorney who conducted the trial, and there, as here, a number of exceptions were made to evidence admitted without objection; and after careful study this court followed the established rule, citing at page 567 a number of decisions of this court which had applied it, and refused to rule upon the exceptions made. It was there said: "No court can proceed with order and do justice without the guidance and observance of rules of procedure which experience has taught are essential. . . We can not disregard one rule simply to enforce another. . . In the absence of proper objection at the trial, neither of these assignments of error can be reviewed by this court." We add to what was there said the further statement that such rules will not be violated by this court in order to decide questions in cases where counsel have ignored the established rules. We see here the total absence of any objection upon the trial to the matters complained of in the first four special grounds of the motion for new trial, and this court will make no ruling thereon.

■ Special grounds 6 and 7 except to a portion of the charge relating to a confession. The complaints are without merit and require no discussion here.

Special ground 8 excepts to a recharge upon request. The foreman of the jury stated that there were two ways in which they could put it if they found the defendant guilty, one, turn him

■

over to the court, and the other just find him guilty, requesting the court to explain the difference between them. Thereupon the court instructed the jury that, if they believed beyond a reasonable doubt that the defendant, at a time prior to the return of the indictment, in Bibb County, with the instrumentality named in the indictment, that is, poison, and with malice aforethought, either express or implied, did unlawfully and intentionally poison and kill the deceased in the manner charged in the indictment, then they would be authorized and it would be their duty to convict the defendant of the offense of murder, in which event the form of their verdict would be "We, the jury, find the defendant guilty," and that the verdict would mean that he would be sentenced to execution by electrocution, unless the jury saw fit to recommend him to the mercy of the court; and the court instructed them that the jury had the right to make such recommendation and attach it to their verdict in case they found the defendant guilty, with or without a reason, and that they could make it for any reason satisfactory to themselves or without any reason, and that they could make it arbitrarily, as a matter of course, or as a matter of discretion; and in the event they did so recommend the defendant to the mercy of the court, in case they found him guilty, then the form of their verdict would be "We, the jury, find the defendant guilty and recommend him to the mercy of the court," and this would mean that the defendant would be sentenced to imprisonment for life. The charge is criticised because it is contended that, in charging that it was possible for the jury to return such verdicts, it amounted to a statement by the court that a verdict of guilty was authorized under the evidence. It is contended that the charge is equivalent to saying that it is possible in this case for the jury to find a verdict of guilty without any recommendation; and it is contended that this necessarily conveyed the impression to the jury that such a verdict was authorized by the evidence, and that the court thought such a verdict was possible and proper under the evidence. The charge is a correct statement of the law and is not subject to any of the criticisms made.

The 9th special ground excepts to a portion of the charge wherein the court instructed the jury in substance that the defendant contended that he was not guilty, and that by his plea of

not guilty, his statement, and through his counsel he denied guilt, and he denies that the State had proved his guilt to a moral and reasonable certainty and beyond a reasonable doubt. The defendant contends that, whatever may have caused the death of the deceased, if it were in fact poison, he had no knowledge of it and had no connection with it, and is not guilty in any manner set out in the indictment. The excerpt then charges that, if from a consideration of the evidence, the defendant's statement, or from the defendant's statement alone, the jury had a reasonable doubt of the defendant's guilt, it would be their duty to acquit him. The attack upon the charge is that it is prejudicial and a misstatement of the defendant's contention, in that he has never admitted that his wife's death was caused by poison; that his plea challenged every material allegation of the indictment; and that he contended that in August prior to her death she fell and fractured her skull and never recovered from its effect, and this could have caused her death, and that the court ignored entirely the contention that the deceased had been injured. It is contended further that the confession was obtained through hope and fear and was not voluntary, and that the court failed to charge on the contention of the accused that the confession was not voluntary. The excerpt is further assailed because in the latter part thereof the court instructed the jury that, if they were not convinced of the guilt of the accused to a moral and reasonable certainty, it was their duty to acquit him; and it is contended that the court thus instructed the jury that they should convict if they believed his guilt had been shown to a moral and reasonable certainty, whereas the law requires that the guilt must be shown beyond a reasonable doubt. Without here quoting the different portions of the charge, it may be said that our examination of the charge reveals that the court repeatedly, as many as six times or more, instructed the jury that, before they would be authorized to convict, they must believe the defendant guilty beyond a reasonable doubt. Having thus elsewhere repeatedly instructed the jury on the question of reasonable doubt, and in fact in the short excerpt here under attack the court having instructed the jury that if there rested upon their minds a reasonable doubt of the defendant's guilt it would be their duty to acquit him, it was not error to follow this instruction with the language complained of, to wit, "or you are not convinced of his

guilt to a moral and reasonable certainty." *Bone* v. *State,* 102 *Ga.* 387 (30 S. E. 845) ; *Davis* v. *State,* 114 *Ga.* 104 (39 S. E. 906) ; *Robinson* v. *State,* 128 *Ga.* 254, 258 (57 S. E. 315). All criticisms are without merit.

■ The general grounds and special ground 5 of the motion for new trial deny the sufficiency of the evidence to support the verdict. Many portions of the evidence are set forth in the statement of facts. The signed confession establishes every material element of the crime charged in the indictment. The testimony of the witnesses to this confession to the effect that it was freely and voluntarily made and was not induced by hope of reward or fear of punishment made a prima facie case and authorized the introduction of the confession in evidence. While the statement of the accused upon the trial denied the contents of the confession and contended that it was obtained by improper methods, this amounted to no more than an issue on the facts as to whether the confession was freely and voluntarily made, and this ·issue was one for the jury. *Bryant* v. *State,* 191 *Ga.* 686 (13 S. E. 2d, 820). There was no testimony of the State's witnesses showing illegal or improper methods employed for the purpose of obtaining the confession. While it is true that some officials had seen the defendant a number of times prior to the confession, and on each occasion he had told them that he was not ready to make a confession at such times but intended to make one later, yet the two persons who witnessed this confession had employed no improper methods for obtaining it, and the accused in his statement at the trial charged them with no improper treatment. The State's evidence, aside from the confession, strongly points to the guilt of the accused. His purchase and possession of the same kind of poison which caused his wife's death, his admitted and proved illicit relationship with another woman, his assurances to her that he would soon be in position to go with her, and his telephoning her within two or three hours of the death of his wife and stating that now he and his boys were hers if she wanted them, point strongly to the defendant's guilt.

Special ground 5 contends that the evidence does not show that the deceased was poisoned in Bibb County. This contention is predicated, of course, upon the assumption that the confession can not be considered. We think that the evidence, aside from

the confession, is sufficient to prove that the deceased was poisoned in Bibb County, Georgia, and died in that county as a result of the poison. The evidence shows her arriving home from work at between 5 and 6 p. m. and shows her in the constant presence of Mrs. Smith, who lived in the same house, from near 8 until 10 o'clock, and shows the arrival of her husband within minutes after Mrs. Smith left. The testimony as to the evident quantity of the poison taken and the time of its effect shows that she would necessarily have died within minutes after consuming that poison, and there is no question but that she was at her home, which was located in Bibb County, Georgia. The evidence authorized the verdict, and there is no merit in either of these grounds.

*Judgment affirmed. All the Justices concur.*